IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

STEVEN J. LYNCH,

      Defendant.

Criminal No. 14-181
ELECTRONICALLY FILED

**MEMORANDUM ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE,
<u>MOTION FOR NEW TRIAL (DOC. NO. 233)</u>**

Defendant, Steven J. Lynch ("Lynch"), a highly skilled tax attorney and sophisticated businessman, was found guilty of 16-counts of willful failure to pay over withheld employment taxes in violation of 26 U.S.C. § 7202, of a 29-count Superseding Indictment,[1] on September 9, 2016. The evidence at trial fairly established that Lynch possessed superior knowledge of tax and corporate laws which he used to keep Internal Revenue Service ("IRS") agents from being able to collect taxes due for several entities that make up the Iceoplex - - a collection of businesses related to an indoor ice skating rink[2] - - by shifting assets and employees among several entities.

---

[1] The Superseding Indictment charged Lynch with Corrupt Endeavor to Obstruct and Impede the Due Administration of the Internal Revenue Laws in violation of 26 U.S.C. § 7212(a) at Count 1, and the remaining 28 counts were for Willful Failure to Pay Over Tax in violation of 26 U.S.C. § 7202, for separate quarters between April of 2008 and March of 2015, regarding unpaid employment taxes from at least four businesses. Doc. No. 43. Prior to trial, the Government voluntarily dismissed Count 12 of the Superseding Indictment. Doc. No. 105. Lynch was acquitted of Counts 1-11 and 20 and found guilty of Counts 13-19 and 21-29.

[2] The Iceoplex property includes the ice rink, which was used as a practice facility for the National Hockey League's Pittsburgh Penguins for several years, a restaurant, and a fitness center.

For a period of more than ten years, Lynch kept the IRS at bay, with promises to pay the withheld employment taxes owed, and with partial payments, some made involuntarily on the rare occasion when the IRS was able to successfully levy a bank account or by applying refunds due to Defendant from his personal tax returns. He structured the Iceoplex entities to keep employees in companies with minimal assets which resulted in the IRS being unable to collect unpaid liabilities; and, he kept Iceoplex assets in other companies that were then able to receive large loans from banks that were unaware the other Iceoplex entities owed millions of dollars in unpaid employment taxes. Trial testimony established that Lynch told IRS agents that he would make more payments toward the unpaid tax liabilities when he was able to secure funds, but instead, Lynch used funds from the loans obtained to pay other creditors and to make capital improvements to his businesses.

After deliberating over four days for a total of 19 hours, which exceeded the total trial time of 17.5 hours, the Jury returned a verdict in this case which shows a careful count-by-count analysis. The Jury found that the Government proved beyond a reasonable doubt each element of the crimes charged at Counts 13 through 19 and 21 through 29, but acquitted Lynch on all other counts. Doc. Nos. 203, 208.

Lynch now moves for judgment of acquittal under Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial under Federal Rule of Criminal Procedure 33. Doc. No. 235. For the reasons set forth herein, the Court will DENY these motions.

I. **Legal Standards**

    A. **Federal Rule of Criminal Procedure 29**

Federal Rule of Criminal Procedure 29 provides that a defendant "may move for a

judgment of acquittal . . . after a guilty verdict," for "any offense for which the evidence is insufficient to sustain a conviction."  When reviewing a post-verdict motion for judgment of acquittal under Rule 29, a district court "must review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence."  *United States v. Smith*, 294 F.3d 473, 476-77 (3d Cir. 2002).  District courts must be careful "not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [their] judgment for that of the jury."  *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (*citing United States v. Jannotti*, 673 F.2d 578, 598 (3d Cir. 1982) (*en banc*).

### B. Federal Rule of Criminal Procedure 33

Federal Rule of Criminal Procedure 33 permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires."  When reviewing a Rule 33 motion, the district court must exercise its own judgment in assessing the Government's case, but can order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred--that is, that an innocent person has been convicted."  *United States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2008) (*quoting United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)).

### C. Elements of 26 U.S.C. § 7202 as Set Forth in the Jury Instructions

For each of the time periods specified in the Counts for which Lynch was found guilty by the Jury, the Government had to prove beyond a reasonable doubt:

1. That Mr. Lynch had a duty under Title 26 of the United States Code to collect, account for, and pay over taxes from the wages of employees;

2. That Mr. Lynch failed to collect, or to truthfully account for, or to pay over the taxes; and,

3. That Mr. Lynch acted willfully.

Final Jury Instructions, Doc. No. 165.

"Willfully" means a voluntary and intentional violation of a known legal duty. Doc. No. 165. Conduct is not willful if done through negligence, mistake, accident, or due to a good faith misunderstanding of the requirements of the law. *Id.* A "good faith belief" is one that is honestly and genuinely held. *Id.* A belief need not be correct or objectively reasonable to be held in good faith. *Id.* To find that a defendant acted "willfully," the evidence must prove beyond a reasonable doubt that the defendant acted with a purpose to disobey or disregard the law. *Id.* There is no requirement, however, to prove that a defendant had any evil motive or bad purpose other than the purpose to disobey or disregard the law. *Id.*

## II. Discussion

### A. Sufficient Evidence Exists to Support a Finding of Defendant's Willfulness for the Counts on which Defendant was Convicted

Lynch argues that the evidence presented at trial was insufficient to establish that he "willfully" failed to pay the employment taxes and that "overwhelming evidence of [his] good faith" was not refuted by the Government. Doc. No. 235, pp. 9-13. Lynch contends that his good faith was shown by: his accurate and timely-filed quarterly employment tax returns (Form 941s); his payment of a portion of the taxes due; his so-called "prior course of dealings" preceding the quarters for which he was indicted and during which he paid employment taxes late; mistakes made by the IRS in applying payments made to the several employer-company accounts and filing liens in an attempt to collect the taxes owed; and, finally, the undisputed evidence that Lynch always stated that he intended to pay the employment taxes. *Id.*

Viewing the evidence in the light most favorable to the prosecution, the Court finds that the following evidence presented at trial supports the Jury's verdict finding a willful failure to pay the employment taxes for the counts for which Lynch was convicted.

First, Lynch never disputed that the employment taxes at issue were unpaid. In fact, Defendant's own expert witness submitted a report showing that the taxes still due - - with interest, penalties, and fees - - totaled $2,743,127.00 for all quarters between March of 2008 and March of 2015. Doc. No. 201, pp. 44-49; Doc. No. 225, pp. 209-213 (Defendant's expert David Kaplan testified about his calculations of the amounts owed and paid for all of the employer-companies).

Second, the Counts for which Lynch was convicted are for a two-year, nine month time period between the quarter ending June 31, 2012, and the quarter ending March 30, 2015. Doc. No. 212. Evidence at trial from which a rational factfinder could conclude that Lynch acted willfully during that time period includes:

- Lynch's failure to make any timely payments toward the taxes related to Counts 13-19 and 21-29. *See* Doc. No. 201, pp. 44-49; and Exhibit G-96.[3]

- The IRS's notice to Lynch in April of 2010 that his actions, such as paying other creditors (including himself), would meet the standard for willfulness. *See* G-72.

- The FBI's interview of Lynch in March of 2011, during which he was notified that he was the subject of a criminal investigation for willful failure to pay employment taxes. Doc. No. 223, p. 216-218. After the FBI interview, Lynch made full, timely payments for three

---

[3] Of note, both the Defendant's expert report and the Government's exhibit G-96 showed that Lynch timely paid a portion of the taxes due from Alder Street Management Company for the quarter ending June 31, 2014, and the Jury did not convict Lynch for Count 20 associated with that quarter.

subsequent quarters and substantial partial payments for two more subsequent quarters before failing to make any payment towards the taxes owed for the quarters related to the Counts for which he was convicted. *See* Doc. No. 201, pp. 44-49.

- Lynch's failure to pay employment taxes owed after receiving a $6.5 million loan for several Iceoplex entities in 2013; instead, he paid other creditors and made capital improvements to the Iceoplex property. Jt. Exh. 211; Doc. No. 224, pp. 10-12. *See United States v. Boccone*, 556 Fed. App'x 215, 239 (4th Cir. 2014), *cert. denied*, 135 S.Ct. 169 (2014) ("The intentional preference of other creditors over the United States is sufficient to establish the element of willfulness.").

- Lynch authorized payments in excess of $25 million from the Iceoplex entities' accounts between 2008 and 2014 while accruing more than $2 million in unpaid employment taxes during the same time period. *See* G-94; G-96; G-83; Doc. No. 222, pp. 106-08.

- When the IRS took steps to collect the amounts owed through involuntary means such as bank account levies and liens on property, Lynch shifted employees and assets and structured the companies so that the IRS could not effectively collect the money due for the taxes.[4] *See* G-93; Doc. No. 223, pp. 119-23; Doc. No. 222, p. 87.

Moreover, Lynch's insistence that he had established a so-called "prior course of dealing" with the IRS which showed that his non-payment was not willful - - in which he claims the IRS essentially "acquiesced" in his continual non-payment of the taxes when due - - was not

---

[4] Further, although Lynch makes much of the more than $1 million in employment taxes that were paid during the indictment period, the evidence at trial showed that a portion of this amount paid towards the employment taxes was not voluntarily done, but was achieved through levies on various bank accounts associated with the employer-entities and by applying refunds due to Lynch from his personal tax returns. *See, e.g.,* Doc. No. 223, pp. 23; 79-80; and Exhibits JT-53; JT-54; JT-55.

supported by the evidence. To the contrary, the evidence showed that the IRS was not willing to enter into formal or informal payments plans with Lynch after a certain point in time, *see, e.g.,* Doc. No. 223, pp. 106-108[5]; was not willing to abate the penalties due because Lynch was not entitled to such abatements, *see, e.g.,* exhibit G-47, Doc. No. 223, pp. 85-88; and consistently informed Lynch that his continued non-payment of the taxes was considered "willful" by the IRS, s*ee, e.g.,* exhibits G-67, G-73.

The evidence presented at trial by the Government showed that, for a period of more than ten years after he purchased the Iceoplex property, Lynch continually failed to pay employment taxes withheld from employee wages, often blamed the failure to pay taxes on the poor financial condition of the Iceoplex companies while authorizing large sums to pay for improvements to the property and, therefore, increasing the value of his investment in the Iceoplex. *Id. See also Lee v. United States*, 951 F. Supp. 79, 83 (W.D. Pa. 1997) ("It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern--the government cannot be made an unwilling partner in a floundering business.").

The Jury reasonably concluded that, after a certain point in time, Lynch's failure to pay the taxes was not indicative of good faith to pay what was owed, but instead his conduct showed intent to willfully avoid paying as much of the amount owed as possible.

---

[5] Revenue Officer Mary Arndt testified that she "couldn't consider an installment agreement as long as [Lynch] was running up more liabilities because that doesn't solve the problem[.]" The IRS will only consider installment agreements for taxpayers who are otherwise current on their tax liabilities. Doc. No. 223, p. 107.

## B. Defendant was a "Person Responsible" to Collect, Withhold, and Pay Over Employment Taxes.

Lynch also attempts to re-litigate several issues decided by the Court in pre-trial rulings. First, Lynch argues that he was not a "person responsible" under Section 7202 to "collect, account for, and pay over" the employment taxes for the employer-entities. Doc. No. 235, p. 40. This issue was initially raised in Lynch's Motion to Dismiss the Superseding Indictment in which he argued that the Government had not identified him as the "person required to collect, account for, and pay over" the taxes. Doc. No. 81. As the Court found in its Memorandum Order denying Lynch's Motion to Dismiss the Superseding Indictment, the Government had set forth the elements that establish who is deemed a "responsible person" under Section 7202 in paragraph 9 of the Superseding Indictment, and then adequately identified Lynch as the person who met those elements. Doc. No. 97, pp. 8-9.

Second, Lynch filed a Motion in Limine to preclude the Government from arguing that he was an "employer," and he therefore could not be the "responsible person" under Section 7202. Doc. Nos. 108; 110. The Court granted Lynch's Motion in Limine to preclude the Government from arguing that he was an "employer" (which the Government did not oppose), but rejected Lynch's arguments made in his brief supporting that motion and in his objections to the proposed final jury instructions that only the "employer" or class of defined employees and officers found in Section 7343 could be the "responsible person" under the statute. Doc. Nos. 134; 165; 184 (rejecting Lynch's argument that only the employer or a class of defined employees and officers in Section 7343 can be a "responsible person" under Section 7202 and entering Final Jury Instructions that define the "responsible person" as someone with "the authority required to

exercise significant control over the [employer's] financial affairs, regardless of whether [the individual] exercised such control in fact.").

Now, Lynch makes a lengthy argument that he cannot be considered a "person" under the statute, because the Government did not prove that he is the employer, officer, or employee of the companies at issue, or member of a corporation or partnership. Doc. No. 235, pp. 36-46.

Under the Tax Code, "person" is defined as an individual, a trust, estate, partnership, association, company, or corporation. 26 U.S.C. § 7701. The definition of a "person" also includes an officer or employee of a corporation, or a member or employee of a partnership, who is under a duty to account for, collect, or pay over taxes. 26 U.S.C. § 7343. Lynch's argument ignores that the term "person" when used in Title 26 includes "individuals."

Additionally, federal appellate courts, including the United States Court of Appeals for the Third Circuit, have repeatedly rejected Lynch's argument as frivolous. *See United States v. Karlin*, 785 F.2d 90, 91 (3d Cir. 1986) ("These contentions [that defendant was not a person within the meaning of Title 26] are frivolous and require no discussion."); *see also United States v. Bishop*, 1991 WL 213755 (6th Cir. 1991) ("When used in Title 26, the term 'person' includes individuals."); *United States v. Latham*, 754 F.2d. 747, 750 (7th Cir. 1985) ("The word 'includes' expands, not limits, the definition of "person" [in 26 U.S.C. § 7343.]"); *United States v. Condo*, 741 F.2d 238, 239 (9th Cir. 1984); *United States v. Rice*, 659 F.2d 524, 528 (5th Cir. 1981).

Moreover, the Government produced an overwhelming amount of evidence to show that Lynch was the person responsible to collect, account for, and pay over employment taxes for the employer-companies at issue in this case.

Dennis Allison, Lynch's partner in the Iceoplex businesses, testified that Lynch controlled deposits into payroll accounts, opened bank accounts, decided which bills to pay, approved payroll, prepared the IRS Form 941 payroll tax returns, and was responsible for paying over the employment taxes to the IRS. Doc. No. 222, pp. 85; 94-102. Drew Mutschler, a business partner who had been "let go" by Lynch, testified that Lynch had authority over all long-term decisions, accounting, finances, banking, paying bills, transferring funds, and employment taxes. Doc. No. 224, pp. 169; 180; 188; 190; 198. Marcie Delsardo, the controller for the Iceoplex entities, testified that Lynch decided whether to pay bills, had access to bank accounts that even she could not access, decided whether to transfer money between different bank accounts, approved payroll, and decided which bank accounts to use for payroll. Doc. No. 223, pp. 231; 237, 244-45.

Further, nearly every exhibit produced at trial is either a tax form completed by Lynch on behalf of the Iceoplex entities, or correspondence between the IRS and Lynch related to the unpaid employment taxes of the Iceoplex entities. The evidence produced at trial meets and exceeds the requirements of the statute to prove that Lynch was the person responsible to collect, account for, and pay over the employment taxes for the Iceoplex entities.

### C. Legal Status and Separateness of the Employer-Companies and Related Companies Does Not Negate Defendant's Responsibility Under Section 7202.

Again, attempting to re-litigate issues decided before trial, Lynch also argues that the "legal status and separateness of the employer-companies and related companies" of the Iceoplex entities was improperly disregarded and was "clear legal error." Doc. No. 235, p. 13. Prior to trial, as a motion in limine, Lynch sought to preclude the Government from introducing evidence

related to the assets and financial accounts of other entities that were controlled by Lynch as well as evidence of Lynch's personal assets and financial accounts. Doc. No. 109; 110. The Court denied Lynch's motion in limine, finding that the Superseding Indictment alleged that Lynch "created numerous nominee entities to hold his ownership interest in the Iceoplex at Southpointe[,]" and that this evidence was, at a minimum, relevant to the charge that Lynch corruptly endeavored to obstruct and impede the administration of the Internal Revenue Laws under 26 U.S.C. § 7212(a), (Count One of the Superseding Indictment). Doc. No. 134, p. 3. The Court also found such evidence relevant because of Lynch's intent to argue that his contribution of personal funds to the Iceoplex was evidence of his "good faith/lack of willfulness" defense. *Id.*

Lynch now argues that "corporate formalities and structures matter and must be respected, unless the rare exception for piercing the corporate veil exists[.]" Doc. No. 235, p. 13, citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003). Although the general principle that entities may be formed and structured in countless ways cannot be denied, Lynch's use of corporate structure to avoid paying over withheld employment taxes cannot be used to shield him from criminal and civil liability under the Tax Code. 26 U.S.C §§ 6672 and 7202.

Sections 6672 and 7202 specifically prevent an individual from escaping civil or criminal liability by holding individuals responsible for collecting, accounting for, and paying the employment taxes of corporate entities. As the Government aptly states, "[i]f an individual could avoid personal liability -- either criminal or civil -- by simply creating corporate entities to accrue employment taxes and not pay them over, then the statutes would be rendered meaningless." Doc. No. 241, p. 11. To allow an individual to escape responsibility under 26 U.S.C. § 7202

simply by creating new corporate entities, as the Jury rationally found that Lynch did here, would render Section 7202 inoperative.

### D. Lynch Received a Fair Trial

The remainder of Lynch's arguments relate to his contention that he did not receive a fair trial and that the Court displayed bias in favor of the Government.

#### a. The Court's Pre-Trial Rulings

Lynch raises nearly every pre-trial ruling that was not made in his favor as a reason for the Court to grant a new trial.

##### i. Jury Instructions

Raising the same arguments discussed, *supra*, regarding the definition of "person responsible" under Section 7202 and the "legal status and separateness of the Employer-companies and related companies and Defendant," Lynch argues that his proposed jury instructions - - which would have essentially instructed the Jury to acquit him - - were improperly denied by the Court. Doc. No. 235, pp. 37-38. The Court refers to its justification for rejecting those jury instructions in the previous rulings, doc. no. 184, and to the reasons already discussed herein.

##### ii. Exhibits

Similarly, Lynch argues that the Court's pre-trial rulings on exhibits allowed the Government to present irrelevant evidence - - evidence of the related Iceoplex companies and of his personal finances, and the Government's summary exhibits and summary witness regarding the unpaid taxes and bank account information from the Iceoplex entities. Lynch also argues he was precluded from offering relevant evidence. Specifically, evidence of settlement agreements

for unrelated civil actions and installment agreements from a time period the Court concluded was irrelevant to the conduct charged in the Superseding Indictment. Lynch also argues that copies of statutes and caselaw he allegedly relied upon should have been provided to the Jury. Doc. No. 235, pp. 58-69; Doc. Nos. 134; 164.

The Court will not restate its previous rulings on the relevance and admissibility of the exhibits at issue, but instead refers to those decisions. Doc. Nos. 134; 164. As the Government explains, at least some of Lynch's evidence ruled irrelevant by the Court during the pre-trial phase was later admitted into evidence during the trial when Lynch's Counsel showed the exhibits during cross-examination of Government witnesses. Doc. No. 241, p. 20; *see, e.g.,* Doc. No. 223, p. 53. The Court also notes that Lynch was specifically instructed that he could quote from statutes and caselaw through testimony to show that he relied on certain legal materials as part of his good faith defense, but that it was improper to provide copies of statutes and caselaw to the Jury. Doc. Nos. 134; 164.

### b. Trial Rulings

Lynch argues that trial rulings regarding two witnesses prevented him from offering relevant and essential evidence to his good faith defense: (1) the Court prevented Lynch from questioning Revenue Officer Douglas Blynn about the use of the bankruptcy process by small businesses generally and improperly interpreted a document to impeach Blynn's testimony about an "informal installment agreement"; and (2) Lynch was allegedly prevented from calling a client of Lynch's law practice to testify about an installment agreement to pay taxes. Doc. No. 235, pp. 72; 60.

The Court ruled that the general questions regarding the use of bankruptcy by small

businesses to Officer Blynn was irrelevant. Lynch did not use the bankruptcy process for any of the Iceoplex companies, and it is irrelevant to his willfulness or good faith in the nonpayment of employment taxes whether any other businesses did so. Regarding the document by which Lynch's Counsel was attempting to impeach Blynn's testimony about "informal installment agreements," the Court correctly analyzed the document, exhibit D-154 - - which was not an agreement and was merely a collection of letters from Lynch to Blynn enclosing payment for past-due taxes.

Regarding the client of Lynch's law practice, the Court instructed Lynch to make a proffer of her proposed testimony so that relevance and admissibility could be determined. Doc. No. 224, p. 157. Lynch never made the proffer and never called the witness to testify. The Government opines, and the Court agrees, that the witness's testimony likely would have been ruled irrelevant by the Court, but also that Lynch "cannot fault a ruling never made by the Court[.]" Doc. No. 241, p. 21.

### c. Lynch was not Required to Disclose Whether He would Testify

Lynch argues that he was "forced" to identify himself as a witness at the close of the fourth day of testimony. Doc. No. 235, p. 51. He claims that the Court's open-ended question regarding the trial schedule "forced" Defendant to state that he would testify and then later retract that statement.

> THE COURT: Who is your next witness?
>
> MR. BARNES: John Gavin.
>
> THE COURT: How long will his testimony take?
>
> MR. BARNES: 15 to 20 minutes.

14

|               |                                                                                                                                                                                                                                                                                                                                                                                                          |
| ------------- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| THE COURT:    | Who else do you have to call in your case in chief after Mr. Gavin?                                                                                                                                                                                                                                                                                                                                      |
| MR. BARNES:   | Our last witness would be Mr. Lynch.                                                                                                                                                                                                                                                                                                                                                                     |
| THE COURT:    | You got Mr. Gavin and Mr. Lynch and there is another person mentioned, B.S. [(the witness mentioned, *supra*, who was previously identified as a client of Mr. Lynch's law practice who was going to be called to testify about installment payment plans),] Is that person going to be called or not?                                                                                                   |
| MR. BARNES:   | No.                                                                                                                                                                                                                                                                                                                                                                                                      |

Doc. No. 225 at pp. 276-77.

Defense Counsel had many options that he could have chosen to respond to the Court's questions about the remaining witnesses and the trial schedule: he could have stated that he wanted to discuss the issue outside the presence of the Jury - - as the Government illustrates, Defense Counsel had asked to address matters outside of the Jury's presence at previous times during the trial, *see e.g.* Doc. No. 223, p. 3; or, he could have stated that he had not yet planned out the next day's witnesses; or, he could have identified Mr. Gavin only (who did not actually testify). Throughout the trial, the Court had routinely asked about the upcoming witnesses so that the Court and the Jury could have some idea about the schedule for the day. *See e.g.* Doc. No. 224, p. 7. Lynch cannot argue now that he was "forced" by the Court to state that he would testify. Indeed, if, as Lynch now argues, he had not yet decided whether or not to testify, he had no need to reveal himself as an upcoming witness at all.[6]

---

[6] Any error caused by Lynch's decision to reveal himself as an upcoming witness and then choosing to invoke his right to not testify was cured by the Court's instruction to the Jury. Doc. No. 226 at pp. 79-80.

15

### d. The Trial Time Limits did not Constrain Lynch's Defense, and Lynch was not Forced to Enter into Stipulations

During the Preliminary Pretrial Conference, the Court set reasonable time limits of 15 hours per side for direct and cross examination of witnesses after considering the Parties' estimates of time needed for trial, the witness lists and proffers of testimony submitted by the Parties, the time needed for comparable criminal cases and complex civil cases such as class actions, and due process concerns. Doc. No. 168. The Court expressly stated that it would reconsider the time limits during trial as warranted. *Id.* No objections were made to the trial time limits at the Preliminary Pretrial Conference, nor at the Final Pretrial Conference several days later. Doc. Nos. 168 and 188. Just before trial was to begin, Lynch sought an enlargement of the trial time limits to 20 hours per side. Doc. No. 191.

The rules governing procedure in federal court do not explicitly provide for a court to set time limitations for a trial. However, the inherent power of a district court to manage cases before it in a just and efficient manner is codified in these rules. Federal Rule of Criminal Procedure 2 provides that the rules "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." The federal rules "repeatedly embody the principle that trials should be both fair and efficient." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 609 (3d Cir. 1995). The United States Supreme Court has observed, "[I]f truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings. *Geders v. United States*, 425 U.S. 80, 87 (1976).

Despite only using six and one-half hours of the 20 hours he was ultimately permitted, *see* doc. no. 225, p. 171, Lynch now complains at length that the Court's imposition of trial time limits violated his rights to Due Process and to confront witnesses and receive effective assistance of counsel. Doc. No. 235 pp. 52-58. The Court made it clear throughout the pre-trial and trial proceedings that it would re-evaluate the need for additional time as warranted. *See, e.g.,* Doc. No. 195, p. 7 ("As stated at least twice before, the Court will reconsider the Parties' need for additional time as trial progresses.").

Finally, the Court did not "force" Defendant to enter into stipulations with the Government. The Parties were repeatedly encouraged to stipulate to facts that were not in dispute and to stipulate to the authenticity and admissibility of documents in order to streamline the issues for trial and avoid any needless waste of the Jury's time. The failure of litigants to ensure that jurors are not subjected to duplicative and needless testimony diminishes the quality of trials and is unfair to the civilian-jurors who receive minimal compensation for their valuable service. *See United States v. Warner*, 506 F.3d 517, 524 (7th Cir. 2007) (*citing* Gordon Van Kessel, Adversary Excesses in the American Criminal Trial, 67 Notre Dame L. Rev. 403, 478-79 (1992)) ("Exceedingly lengthy trials lead to reduced concentration and recollection of events on the part of all participants, particularly witnesses and jurors. In very long cases, exhaustion may diminish everyone's performance.").

Had Lynch refused to stipulate to a single fact or the admissibility of any documents, the Court could not have and would not have "forced" him to do so. As the Government explains, Lynch has not identified "a single document that the Government introduced that he believed the Government would have been unable to authenticate. On the other hand, but for the parties'

stipulation, [Lynch], very likely, would have been unable to admit into evidence many of his documents – and certainly not without calling various document custodians." Doc. No. 241, p. 17.

### e. The Court Displayed No Bias

Finally, citing all of the Court's pre-trial and trial rulings previously mentioned, the imposition of trial time limits, the Court's "forcing" Lynch to name himself as an upcoming witness despite Lynch's indecision as to whether to testify, and a handful of rulings on objections made during the trial, Lynch argues that the Court "displayed a high degree of favoritism to the Government and disdain for [Lynch] and his counsel that at a minimum shows an appearance of bias that resulted in violation of [Lynch's] due process rights[.]" Doc. No. 235, p. 70.

To establish bias, a defendant must prove that the trial judge had a personal bias or an appearance of bias against a defendant or a class of which defendant is a member. *United States ex rel. Perry v. Cuyler*, 584 F.2d 644, 648 (3d Cir. 1978). Being unable to meet this standard, Lynch instead characterizes neutral actions by the Court - - such as encouraging both Parties to enter into stipulations regarding the authenticity and admissibility of documents prior to trial - - as the Court "forcing" him to enter into stipulations with the Government, or by describing the Court as having "angrily told the jury to leave the courtroom[.]" Doc. No. 235, p. 56.

The Court managed the trial fairly and applied instructions and rulings equally to both Parties. Although Lynch now tries to argue that he was "forced" to do things such as provide potential impeachment materials to the Government prior to cross-examination of a Government witness, the Court ordered no such thing. Doc. No. 235, p. 71. The Court only required Lynch to show the Government the impeachment materials prior to showing those materials to the witness.

Doc. No. 223, pp. 45-46. Defense Counsel had improperly shown the impeachment materials to the Jury by displaying them on a screen without seeking their admission into evidence or showing the materials to the Government prior to their publication. *Id.*

Lynch has failed to make any showing of the Court's bias or an appearance of bias against him personally or against any class of which he is a member. *Perry v. Cuyler*, 584 F.2d 644.

### III. Conclusion

For the reasons stated, Defendant's Motion for Judgment of Acquittal or, in the alternative, Motion for a New Trial, doc. no. 233, is DENIED.

SO ORDERED this 4th day of January, 2017,

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge